UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

---

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>THEODORE MILLER,<br>BEAR INDUSTRIES, LLC and<br>BEAR INVESTMENTS AND BUSINESS CONSULTING, LLC,<br><br>Defendants,<br><br>and<br><br>DEANNA DRUMM,<br><br>Relief Defendant. | Civil Action No. 2:24-cv-00479<br><br>JURY TRIAL DEMANDED |

---

## COMPLAINT

Plaintiff United States Securities and Exchange Commission (the "SEC" or "Commission"), for its Complaint against Defendants Theodore Miller ("Miller"), Bear Industries, LLC ("Bear Industries"), and Bear Investments and Business Consulting, LLC ("Bear Investments"), and Relief Defendant Deanna Drumm ("Drumm"), alleges as follows:

## SUMMARY

1. Since at least 2022, Theodore Miller has engaged in the unregistered and fraudulent offer of securities related to two real estate-related investment programs. Presenting himself as a "millionaire" real estate developer living a jet-setting lifestyle, Miller solicited investors through social media and various websites to invest in the real estate programs, which

were operated by his wholly owned companies, Bear Industries and Bear Investments (collectively, the "Bear Entities"). To entice investors, Miller represented that (1) the investments were safe and secure; (2) investor funds would be used on real estate projects; (3) earlier investors had already earned, and new investors would also earn, high returns; and (4) investors could withdraw their funds 60 days after making a written request. By virtue of these and other representations, Miller raised approximately $370,000 from approximately 170 investors in 37 states and five foreign countries.

2. But Miller's representations were false. He was not a millionaire real estate developer, nor had he achieved many of the successes he claimed on social media. He did not have the funds or assets to guarantee the investment funds he received; he diverted most of the investor funds to pay for personal expenses, not for the designated real estate projects; he had not earned and did not earn promised returns for investors; and, when he received investors' requests to withdraw funds, he ignored all but one of them. Miller's social-media persona and businesses were all a calculated fraud, which he used to divert investor funds for his own personal benefit. He then relocated to South America, where he continued to post about his purportedly lavish lifestyle to lure in more investors.

3. Through these actions, Defendants Miller, Bear Industries, and Bear Investments violated, and unless enjoined will continue to violate, the antifraud and securities-registration provisions of the federal securities laws, namely Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

4.     To protect the public from further fraudulent activity, the Commission brings this action against Defendants and seeks: (i) permanent injunctive relief; (ii) disgorgement of ill-gotten gains and prejudgment interest thereon; (iii) civil penalties; and (iv) such further relief the Court may deem just and appropriate.

5.     The Commission also seeks disgorgement from Relief Defendant Drumm, Miller's mother, who received nearly $170,000 of investor funds from the fraudulent scheme.

## JURISDICTION AND VENUE

6.     The Commission brings this action pursuant to authority conferred upon it by Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)] and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)].

7.     This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), (e), and 78aa].

8.     Defendants offered and sold investment contracts in the forms of investor agreements, partnership agreements, and promissory notes.  Pursuant to Section 2(a)(l) of the Securities Act [15 U.S.C. § 77b(a)(l)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)], all of these are securities.  The promissory notes are also "notes" that fall within the definitions of "security" in both Acts. 15 U.S.C. § 77b(a)(l); 15 U.S.C. § 78c(a)(10).

9.     In connection with the conduct described in this Complaint, Defendants, directly or indirectly, made use of the mails or means or instruments of transportation or communication, or of facilities of a national securities exchange, in interstate commerce.

10.    Venue is proper in this District pursuant to Section 20 of the Securities Act [15 U.S.C. § 77t] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].  Defendants transacted

business in this District, and certain of the acts, practices, transactions, and courses of business constituting violations of the securities laws alleged in this Complaint occurred within this District. Defendants solicited investors within this district, executed investor agreements with investors within this district, and also resided within the district when they engaged in at least some of the conduct alleged herein.

## DEFENDANTS

11. **Miller**, age 34, now resides in Charleston, West Virginia after living in South America for the past two years. Miller is the sole member and founder of the Bear Entities.

12. **Bear Industries** is a West Virginia limited liability company with its principal place of business in Charleston, West Virginia. Bear Industries purports to be a real estate development company. Miller is Bear Industries' sole member and founder.

13. **Bear Investments** is a West Virginia limited liability company with its principal place of business in Charleston, West Virginia. Bear Investments purports to be a real estate investment company. Miller is Bear Investments' sole member and founder.

## RELIEF DEFENDANT

14. **Deanna Drumm**, age 60, resides in Charleston, West Virginia. Drumm is Miller's mother and the administrative manager for the Bear Entities. She received approximately $170,000 of investor funds from the schemes operated by Miller.

## FACTUAL ALLEGATIONS

I.  **Miller Founded and Controlled the Bear Entities.**

15. In May 2018, Miller formed Bear Industries, a real estate development company that purportedly renovates abandoned or distressed properties into affordable rental properties for rental or sale.

16. In August 2022, Miller instructed Drumm to form Bear Investments, which she

4

did on August 18, 2022, listing Miller as the sole member. According to Bear Investments' website, the company acquires distressed properties and rehabilitates them into profitable properties.

17.     At all times, the Bear Entities were controlled by Miller. Drumm provided administrative services to the Bear Entities. The Bear Entities otherwise do not appear to have any employees.

18.     Investors who invested in the Bear Entities' investment programs either wired their funds to Bear Industries' bank account or charged their investments to their credit card using credit card processing accounts maintained by Bear Industries or by another Miller-controlled company. These payments were processed and routed through various platforms (including PayPal and Stripe) and were eventually transferred to bank accounts controlled by Miller and Drumm.

**II.     Miller and Bear Industries Solicited Investors for the "Bear-Lute" Program.**

19.     In or around early 2022, Miller began to solicit investors to fund his various real estate projects through a program labeled "Bear-Lute." Miller offered the Bear-Lute program to prospective investors via general solicitation, through a Bear-Lute website, and on his social media accounts, particularly on TikTok, YouTube, and Instagram. According to the Bear-Lute website, investor funds would be pooled and used for various real estate projects to "enhance the income of the property."

20.     Upon visiting the Bear-Lute website, investors were directed to register for the program. Once registered, Miller or Drumm sent them an investor agreement via Docusign. Shortly thereafter, Miller or Drumm emailed investors a login name and a temporary password to access their supposed investment accounts on the Bear-Lute website portal.

21.     The investor's role in the Bear-Lute program was entirely passive. Investors invested money, the money was pooled together with investment funds from other Bear-Lute

investors, and the investors expected to receive *pro rata* profits from their investments. Further, investors had no role in managing or controlling Bear Industries (or the Bear-Lute program) and reasonably expected that profits would be derived from the efforts of Miller and Bear Industries. Many of the investors in the Bear Entities' investment programs had limited or no knowledge or experience in the real estate flipping business. Investors had no role in managing their investments or the properties underlying their investments. Further, to allay concerns about the investments, Miller told at least one potential investor that the investor only had to invest money and Miller would "handle the leg work."

22. According to the investor agreements, the Bear-Lute program would (1) secure the investment with real estate and Miller's personal guaranty; (2) return investor funds within 60 days of a written request; (3) pay investors a 6% annual return; and (4) use investor funds for unspecified real estate projects. Many of the investor agreements also represented that investor funds would be used for "any Real Estate transaction [Miller and/or Bear Industries] see fit at any point in time."

23. While the Bear-Lute website promised investors they would earn quarterly distributions, the investor agreements did not mention quarterly distributions. Regardless, Miller and Bear Industries never made distributions to investors in the Bear-Lute program, quarterly or otherwise, except for one payment made to a single investor.

24. Neither Bear Industries nor its securities have ever been registered with the Commission in any capacity.

### III. Miller and Bear Investments Solicited Investors in Another Real Estate Program.

25. In June 2022, Miller also began pitching investors on behalf of Bear Investments to invest in a program to purchase or renovate specific properties. Miller advertised the Bear

Investments program on his TikTok accounts. He also emailed prospective investors brochures about specific properties. In conversations with investors, Miller highlighted the "success" of Bear Investments' past investments, though it is unclear whether Bear Investments actually ever had any prior investments.

26. The Bear Investments program used two forms of investment agreements: (1) limited partnership agreements and (2) promissory notes.

27. The partnership agreements provided an investor with a limited partnership interest in the underlying property and identified Bear Industries as the general partner who would manage and perform work on behalf of the partnership. Miller represented to some investors that funds from multiple investors would be pooled for an investment in a single property. The partnership agreements restricted control solely to Bear Industries and, thus, to Miller as Bear Industries' manager. Likewise, investors relied on Miller's purported expertise to purchase and renovate properties to create returns. Investors had no role in managing the partnership's affairs or the purported real estate-related business. According to one investor, Miller, for and on behalf of Bear Investments, represented that he would handle all aspects of the investment.

28. Similarly, the promissory notes promised investors a percentage of the proceeds when Bear Investments refinanced or sold the underlying investment property. The promissory notes specified that investor funds would be used for any activity relating to a specific property. The notes were offered to the public at large, and the investors executed the promissory notes to receive a return on their investments. Investors were not expected to and did not perform any work in connection with the promissory notes.

29. Neither Bear Investments nor its securities have ever been registered with the

Commission in any capacity.

## IV. Miller Made Multiple Misrepresentations of Fact and Omitted Material Information in His Solicitations to Investors.

30. Miller solicited investors for the foregoing investment programs through videos he posted on his social media accounts, on the Bear Entities' websites, and by calling and emailing investors directly. Miller operated multiple social media accounts on TikTok, including @howtomakecrazymoney; @teddymillertheboss; and @teddy_f_cking_miller. In his videos, Miller attempted to portray himself as a successful entrepreneur. He wore designer sunglasses, watches, and shirts and consistently posted about his travels in foreign countries. Miller, for and on behalf of the Bear Entities, also made multiple misrepresentations or omitted material information to induce investors to invest money, including, but not limited to, the following:

### A. Miller and the Bear Entities Misled Investors About Anticipated Returns.

31. According to the Bear-Lute website, "Bear-Lute used Teddy Miller's **Proprietary Real Estate System** to generate exceptionally high returns with little upfront cost, all while providing the new investor the ability to **Grow Overtime [sic] at an Alarming Rate!**" Miller made similar claims in multiple videos on social media, boasting that the Bear-Lute program had "traditionally" and "historically" produced at least 20% returns on investment ("ROI"). He directed investors to visit the Bear-Lute website to learn more about the program, repeatedly goading them with his catchphrase: "You can't make money if you are a f****** p****."

32. The Bear Investments website similarly stated that investors would receive 1.3x to 10x returns depending on the length of their investments.

33. The partnership agreements that investors executed stated that investors would receive profit distributions on a quarterly basis minus any operating expenses and a 20% retainer for unexpected repairs. The promissory notes executed by certain investors likewise stated that

8

investors would receive returns ranging from 2.3% to 15% once the properties were sold or refinanced.

34. The Bear-Lute and Bear Investments websites and materials represented that investment funds would be used to fund various real estate development projects. Investors were led to believe that their investments would be used to rebuild distressed properties. The Bear-Lute investor agreements specifically provided that Bear Industries, under Miller's control, would use investor funds for "any Real Estate transaction they see fit." The Bear Investments promissory notes similarly stated that the invested funds would be used for activities at specific properties.

35. After investors invested funds, Defendants created online account statements that investors could access on the Bear-Lute website. The account statements purported to show that the investors were earning returns on their investments.

36. All of the foregoing representations were false. The Bear Entities' programs had returned nothing to all but one investor, and certainly not a 20% ROI. Defendants were also not generating revenue from their operations that would support the promised returns. It also appears that Miller and the Bear Entities never had enough funds on hand to pay the promised returns. Investors therefore were not earning any of the returns that Defendants reported on investors' online account statements.

37. Further, instead of using investor funds to pay for the real estate projects as Miller had represented, Defendants transferred the majority of investor funds to personal accounts for Miller and Drumm. Miller then misused investor funds from both his personal account and the Bear Entities' bank accounts to pay for personal expenses like rent, insurance for his personal vehicles, and personal travel expenses. Likewise, Drumm spent a significant portion of the

investor funds she received on personal expenses like retail purchases and travel expenses. These transfers and the misuse of investor funds occurred concurrently with Miller's solicitations to investors, in which he continued to promise high returns.

38. Investors never received the promised returns or distributions. Only one investor of at least 10 that requested withdrawals received a distribution, and this amount was a fraction of the promised return. Nonetheless, Miller continued to tout 20% returns even after failing to honor investor withdrawal requests and misappropriating investor funds.

### B. Miller and the Bear Entities Misled Investors About the Safety of Their Investments.

39. The websites for Bear-Lute and Bear Investments claimed that investor money was "safe and secure" and secured by the Bear Entities' assets. Miller made similar representations to investors on social media, titling one August 18, 2022 video, "Why Bearlute.com is safe!" Miller insisted that investing in the Bear-Lute program was equivalent to having a bank savings account, and the Bear-Lute investor agreements labeled investor accounts as savings accounts. Miller also told an investor in an October 5, 2022 email that the Bear-Lute program investments were secured by the underlying real estate assets.

40. The Bear-Lute investor agreements and Bear Investments promissory notes similarly represented that investor funds were personally guaranteed by Miller and secured by specific properties located on Bigley Avenue in Charleston, West Virginia (the "Bigley Avenue Properties"). The partnership agreements, executed by certain Bear Investments investors, also purported to vest the limited partnerships with control or equity ownership in the Bigley Avenue Properties.

41. In reality, none of the investments was secured by Bear Entities assets or properties. Defendants also never owned any of the Bigley Avenue Properties. Instead,

Defendants had land contracts—effectively, lease-to-own agreements—for the Bigley Avenue Properties, but they needed to make additional required payments before receiving title to the properties, which the Defendants failed to do. When Miller and the Bear Entities stopped making payments on the Bigley Avenue Properties in May 2023, the landowner terminated the contracts and evicted Miller and anyone associated with Bear Industries. Miller and the Bear Entities did not otherwise have sufficient properties or assets to secure the investor agreements. Regardless, Miller continued to solicit investments for the Bigley Avenue Properties while falsely claiming that investments were secured by those properties.

### C. Miller Falsely Claimed that Bear Industries Would Return Investor Funds Within 60 Days of a Written Request.

42. Bear-Lute's website stated that investors could receive their funds back 60 days after making a written request. Bear-Lute investor agreements similarly stated that Bear-Lute (as a "product of Bear Industries") would "return all funds due including accrued interest within 60 days of a written request." This statement was false, however, because Defendants never intended to return funds to investors. In particular, when Miller made these representations to certain investors, he had already failed to return funds to earlier investors who had made a proper written request.

43. Several investors either emailed Miller to withdraw their money or submitted a withdrawal request through the Bear-Lute portal, but Miller and Bear Industries did not honor the requests. Miller was aware of the withdrawal requests because Drumm forwarded the requests to him. Even so, Miller and Bear Industries ignored investor efforts to contact them by email or social media. In some cases, Miller even blocked investors on social media.

### D. Miller Did Not Disclose a Cease-And-Desist Order Issued by the West Virginia Securities Commission.

44. On September 12, 2022, the West Virginia Securities Commission sent Miller and

Bear Industries a letter ordering them to cease and desist from offering and selling securities in the state of West Virginia until Bear-Lute was properly registered. When Miller failed to properly register, the West Virginia Securities Commission issued a cease-and-desist order (the "Cease-and-Desist Order") in November 2022 against Miller and Bear Industries, barring them from offering or selling securities in West Virginia. Regardless, after the Cease-and-Desist Order was issued, Miller continued to solicit investors in West Virginia and elsewhere in the Bear-Lute and Bear Investments programs, raising approximately $207,000. The Cease-and-Desist Order proscribed at least some of these solicitations and also raised the prospect that the offerings involved securities. Defendants therefore had a duty to disclose the Order and its findings and conclusions when they solicited the investors. Defendants never disclosed the Cease-and-Desist Order. In fact, seven days after the Cease-and-Desist Order was issued, Miller posted a video to social media proclaiming that the Bear-Lute Program was "100% legal."

**V.    Defendants Acted with Scienter.**

45.     Miller knew that his representations were false and misleading. He knew that neither he nor the Bear Entities possessed sufficient assets to secure investors' investments, and he continued to represent to investors that their investments were secured by the same properties, even after being evicted. Miller also continued to tout the Bear-Lute program's high returns after ignoring investor withdrawal requests and failing to pay investor returns. In addition, Miller continued to represent to investors that their funds would be used for real estate projects despite using the investor funds for his personal benefit. Miller likewise knew that he had been ordered by the West Virginia Securities Commission to cease offering the Bear Entities' investment programs, yet he continued to do so and did not disclose the Cease-And-Desist Order to investors.

46.     Miller made the foregoing misrepresentations all while flouting federal securities

12

regulations. Not only did Miller fail to inquire whether investors were accredited, he also bragged about his willingness to accept anyone as an investor. In a November 28, 2022 TikTok video, Miller argued that SEC regulations would limit who can invest in the Bear-Lute program. Miller claimed that he created the Bear-Lute program so anyone could invest and emphasized that the program was "100% legal." About one year later, Miller posted another TikTok video explaining that he would allow anyone to get involved. Consequently, Miller made no efforts to determine if investors were accredited before soliciting them to invest in the Bear Entities offerings.

## VI. Drumm Received Ill-Gotten Gains.

47. Drumm worked as Miller's assistant and provided administrative services to the Bear Entities. Drumm sent investors written agreements and login information after they registered for the Bear Entities' programs. She received funds from investors and transferred funds to bank accounts controlled by her and Miller.

48. Drumm received nearly $169,791—nearly half of investor funds received by the Bear Entities—in direct payments or transfers to her personal account. She did not use the investor funds for purposes related to the real estate programs. Instead, she spent the money on personal purchases. She also transferred some of the funds to Miller while he was overseas.

**FIRST CLAIM FOR RELIEF**
**(Against Miller, Bear Industries, and Bear Investments)**

**Violations of Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c)]**

49. The Commission re-alleges and incorporates the foregoing paragraphs by reference as if fully set forth herein.

50. By engaging in the acts and conduct alleged in this Complaint, Defendants, directly or indirectly:

      a.      made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of any prospectus or otherwise, securities as to which no registration statement was in effect; and/or

      b.      for the purpose of sale or delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities as to which no registration statement was in effect; and/or

      c.      made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of any prospectus or otherwise, securities as to which no registration statement had been filed.

51. By engaging in the conduct described above, Defendants have violated, and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)].

## SECOND CLAIM FOR RELIEF
(Against Miller, Bear Industries, and Bear Investments)

**Violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]**

52. Plaintiff re-alleges and incorporates the foregoing paragraphs by reference as if set forth verbatim in this Claim.

53. By engaging in the acts and conduct alleged herein, Defendants, directly or indirectly, in the offer or sale of securities, by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, have:

      a.      knowingly or with severe recklessness employed a device, scheme, or artifice

        to defraud; and/or

    b.    knowingly, recklessly, or negligently obtained money or property by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

    c.    knowingly, recklessly, or negligently engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser.

54.    By reason of the foregoing, Defendants have violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## THIRD CLAIM FOR RELIEF
### (Against Miller, Bear Industries, and Bear Investments)

**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

55.    Plaintiff re-alleges and incorporates the foregoing paragraphs by reference as if set forth verbatim in this Claim.

56.    By engaging in the acts and conduct alleged herein, Defendants, directly or indirectly, in connection with the purchase or sale of securities, by the use of a means or instrumentality of interstate commerce, or of the mails, knowingly or with severe recklessness:

    a.    employed a device, scheme, or artifice to defraud; and/or

    b.    made an untrue statement of a material fact, or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

    c.    engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

57. By reason of the foregoing, Defendants have violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## FOURTH CLAIM FOR RELIEF
### (Against Drumm)

**Equitable Claim With Regards to Relief Defendant**

58. Plaintiff re-alleges and incorporates the foregoing paragraphs by reference as if set forth verbatim in this Claim.

59. Drumm, directly or indirectly, received funds or benefited from the use of such funds, which are the proceeds, or are traceable to the proceeds, of Defendants' unlawful activity alleged above.

60. Drumm has no legitimate claim to these funds that she received or from which she otherwise benefited, directly or indirectly.

61. Based upon the allegations set forth above, Drumm has been unjustly enriched by her direct or indirect receipt of or benefit from investor funds.

62. The Commission is entitled to an order requiring Drumm to disgorge all of the proceeds of investor funds she received or from which she benefited, either directly or indirectly.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

1. Permanently enjoining Defendants Miller, Bear Industries, and Bear Investments from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

2.      Permanently enjoining Defendants Miller, Bear Industries, and Bear Investments from, directly or indirectly, including but not limited to, through any entity owned or controlled by them, participating in the issuance, purchase, offer, or sale of any security, provided, however, that such injunction shall not prevent Miller from purchasing or selling securities for his own personal account;

3.      Ordering the Defendants and Relief Defendant Drumm to disgorge all ill-gotten gains obtained as a result of the violations alleged herein, plus prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

4.      Ordering Defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] for violations of the federal securities laws as alleged herein; and

5.      Imposing such other and further relief as the Court may deem just and proper.

Dated:                                              Respectfully submitted,

                                                    UNITED STATES SECURITIES AND
                                                    EXCHANGE COMMISSION

                                                    */s/ Tyson M. Lies*
                                                    Tyson M. Lies
                                                    Texas Bar No. 24087927
                                                    Catherine Floyd
                                                    Texas Bar No. 24059625
                                                    United States Securities and
                                                    Exchange Commission
                                                    Burnett Plaza, Suite 1900
                                                    801 Cherry Street, Unit 18
                                                    Fort Worth, TX  76102
                                                    Telephone:  (817) 978-3821
                                                    Facsimile:  (817) 978-4927
                                                    liest@sec.gov

floydc@sec.gov

*Attorney for Plaintiff*